UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
-------------------------------------------------------------
                                                :
DAN BATES, et al.                               :    CASE NO. 1:17-CV-2108
                                                :
            Plaintiffs,                         :
                                                :
      vs.                                       :    OPINION & ORDER
                                                :    [Resolving Docs. 59, 60]
CHARTER COMMUNICATIONS, LLC,                    :
                                                :
            Defendant.                          :
                                                :
-------------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

Plaintiffs Dan Bates, Laura Stirling, and Johanna Brooks-Kroggel bring this action against Defendant Charter Communications, LLC ("Charter"), alleging age discrimination. Plaintiff Brooks-Kroggel also alleges Family and Medical Leave Act ("FMLA") retaliation. Defendant Charter counterclaims against Plaintiffs Bates and Stirling, claiming a breach of the duty of loyalty and for unjust enrichment.

Defendant Charter moves for summary judgment on all of Plaintiffs' claims.[1] Plaintiffs Bates and Stirling move for summary judgment on Defendant Charter's counterclaims.[2]

For the following reasons, the Court **GRANTS IN PART** and **DENIES IN PART** Defendant Charter's motion for summary judgment as to Plaintiff Brooks-Kroggel. The Court **DENIES AS MOOT** the summary judgment motions as to all other claims and counterclaims.

## I. FACTUAL BACKGROUND[3]

Defendant Charter says it fired Plaintiffs Bates and Stirling because they failed to learn that an employee they marginally supervised had arguably claimed improper sales commissions.[4] Defendant

---

[1] Doc. 60. Plaintiff Brooks-Kroggel opposes. Doc. 62. Defendant replies. Doc. 63.
[2] Doc. 59.
[3] Plaintiffs Bates and Stirling have agreed to a stipulated dismissal with prejudice of their age discrimination claims and of Defendant Charter's counterclaims against them. Doc. 61. This factual background will therefore only discuss Plaintiff Brooks-Kroggel.
[4] *See generally* Doc. 53-4; Doc. 53-5.

Charter says it fired Plaintiff Brooks-Kroggel because of performance failures and because of her behavior during a sales fraud investigation of an employee that she had no authority over.[5]

In 2013, Defendant Charter, then Time Warner Cable, hired Plaintiff Brooks-Kroggel as a human resources manager.[6] After Time Warner Cable and Charter merged in 2016, Jessica Sutton became Plaintiff Brooks-Kroggel's direct supervisor.[7]

In October 2016, an investigation began into possible sales fraud or sales manipulation by a sales representative in one of Charter's Ohio stores.[8] The investigation began because Cher Samels, a salesperson in that Ohio store, made a complaint.[9] Originally, Charter assigned Plaintiff Brooks-Kroggel to the team investigating this sales fraud complaint.[10]

However, on December 22, 2016, Sutton removed Brooks-Kroggel from that investigation,[11] allegedly because of concerns about Brooks-Kroggel's impartiality toward Samels.[12] Marielys Ortega, age 30, and Cheri Luster, age 46, replaced Brooks-Kroggel as the investigators.[13]

As a human resources generalist, Brooks-Kroggel helped to oversee human resources complaints and investigations for Charter stores in several states.[14] Plaintiffs Bates and Stirling managed Charter stores, and allegedly had some supervisory authority over the sales associate that allegedly committed fraud. But, as her title suggests, Brooks-Kroggel was not involved in Charter sales; she worked in human resources. Brooks-Kroggel had no supervisory authority over either Samels or the sales person accused of sales fraud.[15] Further, nothing in the record suggests that

---

[5] *See* Doc. 53-3.
[6] Doc. 57-1 at 62:18-20.
[7] Doc. 55-1 at 86:19-23 (page numbers refer to page of the deposition).
[8] Doc. 54-1 at 50:25-51:7.
[9] *Id.*
[10] *See* Doc. 55-1 at 58:20-59:7.
[11] *Id.* at 59:8-18.
[12] Doc. 52-1 at 21:7-23:4.
[13] *See* Doc. 53-3.
[14] Doc. 55-1 at 10:2-11:22.
[15] *See id.* at 18:22-19:2 (describing the role of a human resources generalist).

Brooks-Kroggel's compensation or benefits were tied to the possible sales fraud, or to the outcome of the sales fraud investigation.

The record does not explain how Brooks-Kroggel became a target of the investigation. But, at some point after Sutton removed Brooks-Kroggel from the investigation team, the investigators began to target Brooks-Kroggel.[16]

Even after the investigation was pending, Charter paid Brooks-Kroggel a $13,000 bonus and gave Brooks-Kroggel a letter from Charter's CEO, seemingly commending her for her work.[17]

At the investigation's conclusion, the investigators recommended that Brooks-Kroggel failed to follow Charter's "Open Door" policy; displayed a lack of cooperation, integrity and transparency during the investigation; withheld information; and improperly involved herself in the investigation.[18]

The investigators recommended Charter should terminate Brooks-Kroggel's employment.[19] They prepared a lengthy report detailing their justification for Brooks-Kroggel's termination.[20]

While the investigation was ongoing, Plaintiff Brooks-Kroggel became seriously ill. On November 4, 2016, Brooks-Kroggel had to go to the emergency room because she became suddenly ill.[21] On January 27, 2017, she had to cancel her investigation interview and take off work with the flu.[22] She also took an approved FMLA leave from February 3 until February 9, 2017, after she suffered a serious illness that her husband originally characterized as a heart attack.[23] She also applied for intermittent medical leave on February 28, 2017.[24] Finally, she took FMLA leave beginning at the end of March 2017.[25]

---

[16] *See* Doc. 53-3.
[17] Doc. 57-1 at 94:3-9.
[18] *See generally* Doc. 53-3.
[19] *Id.* at 9.
[20] *See generally id.*
[21] *Id.* at 31.
[22] *Id.* at 32.
[23] *Id.* at 32-33.
[24] *Id.* at 33.
[25] Doc. 57-1 at 106:14-107:7.

Ultimately, Charter terminated Plaintiff Brooks-Kroggel effective April 13, 2017.[26] Brooks-Kroggel was still on FMLA leave when she received her termination letter.[27] That letter stated that "[t]he decision to separate your employment was made before you filed for leave."[28] Brooks-Kroggel was 55 years old when Defendant Charter fired her.

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 56, "[s]ummary judgment is proper when 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'"[29] The moving party must first demonstrate that there is no genuine dispute as to a material fact entitling it to judgment.[30] Once the moving party has done so, the non-moving party must set forth specific facts in the record—not its allegations or denials in pleadings—showing a triable issue.[31] The Court views the facts and all reasonable inferences from those facts in favor of the non-moving party.[32]

When parties present competing versions of the facts on summary judgment, a district court adopts the non-movant's version of the facts unless incontrovertible evidence in the record directly contradicts that version.[33] Otherwise, a district court does not weigh competing evidence or make credibility determinations.[34]

---

[26] Doc. 55-3.
[27] Doc. 57-1 at 73:2-6.
[28] Doc. 55-3.
[29] *Killion v. KeHE Distribs., LLC*, 761 F.3d 574, 580 (6th Cir. 2014) (quoting Fed. R. Civ. P. 56(a)).
[30] *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).
[31] *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).
[32] *Killion*, 761 F.3d at 580 (internal citations omitted).
[33] *See Scott v. Harris*, 550 U.S. 372, 380 (2007).
[34] *Koren v. Ohio Bell Tel. Co.*, 894 F. Supp. 2d 1032, 1037 (N.D. Ohio 2012) (citing *V & M Star Steel v. Centimark Corp.*, 678 F.3d 459, 470 (6th Cir. 2012)).

Case No. 1:17-cv-2108
Gwin, J.

## III. ANALYSIS

### A. Plaintiff Brooks-Kroggel's FMLA Retaliation and Age Discrimination Claims

When a plaintiff does not present direct evidence that her employer terminated her because of her age or as retaliation for taking FMLA leave, the *McDonnell Douglas* burden-shifting analysis applies.

Under the *McDonnell Douglas* framework, a plaintiff must first establish a prima facie case that an employer took some forbidden action.[35] After a plaintiff has made a prima facie case, the burden shifts to the defendant to offer a non-retaliatory reason for the adverse action.[36] The burden then goes back to the plaintiff to show that the proffered reason is pre-textual.[37]

#### 1. *FMLA Retaliation*

FMLA retaliation claims "impose liability on employers that act against employees specifically *because* those employees invoked their FMLA rights."[38] An employer is prohibited from "us[ing] the taking of FMLA leave as a negative factor in employment actions,"[39] or "in any other manner discriminat[ing] against any individual"[40] who utilizes FMLA leave. Unlike with the FMLA interference theory, the employer's motive for taking the adverse employment action is relevant to FMLA retaliation claims.[41]

##### a. *Prima Facie Case*

To establish a prima facie FMLA retaliation case, a plaintiff must show (1) that she engaged in an FMLA-protected activity; (2) that the employer knew the employee was exercising her FMLA rights; (3) after gaining such knowledge, the employer took an adverse employment action against

---

[35] *See, e.g.*, *Grosjean v. First Energy Corp.*, 349 F.3d 332, 335 (6th Cir. 2003).
[36] *Donald v. Sybra, Inc.*, 667 F.3d 757, 762 (6th Cir. 2012).
[37] *Id.*
[38] *Edgar v. JAC Prods., Inc.*, 443 F.3d 501, 508 (6th Cir. 2006).
[39] 29 C.F.R. § 825.220(c); *Arban v. West Pub. Corp.*, 345 F.3d 390, 403 (6th Cir. 2003).
[40] 29 U.S.C. § 2615(b).
[41] *Seeger v. Cincinnati Bell Telephone Co., LLC*, 681 F.3d 274, 282 (6th Cir. 2012).

her; and (4) there was a causal connection between the employee's FMLA activity and the adverse employment action.[42]

"The burden of proof at the prima facie stage is minimal; all the plaintiff must do is put forth some credible evidence that enables the court to deduce that there is a causal connection between the retaliatory action and the protected activity."[43]

Defendant Charter argues that Plaintiff Brooks-Kroggel cannot state a prima facie case because Charter made her termination decision before it knew she would take the March 2017 FMLA leave. As support for this argument, Charter points to Brooks-Kroggel's termination letter, which stated that the termination decision was made before Brooks-Kroggel took FMLA leave.[44] Charter also points to the fact that Sutton traveled to meet with, and presumably to terminate, Brooks-Kroggel in March 2017, but Brooks-Kroggel took FMLA leave before that meeting could occur.[45]

Charter's argument rests on the premise that Plaintiff Brooks-Kroggel's FMLA retaliation claim is based only on the late March 2017 FMLA leave.[46] But when the record is viewed in Brooks-Kroggel's favor, it shows that her FMLA retaliation claim is not based solely on her final FMLA leave. There is significant evidence that Charter knew about all of Brooks-Kroggel's previous FMLA leaves before her March 2017 FMLA leave.[47]

Defendant Charter states that Brooks-Kroggel "admitted" in her deposition that her FMLA retaliation claim is based only on her final FMLA leave. But the actual deposition transcript is ambiguous.

---

[42] *Id.* at 283.
[43] *Dixon v. Gonzales*, 481 F.3d 324, 333 (6th Cir. 2007).
[44] Doc. 55-3; Doc. 55-4.
[45] Doc. 57-1 at 106:14-107:13.
[46] *See id.* at 98:19-99:7.
[47] *See* Doc. 53-3 at 33.

Brooks-Kroggel's deposition testimony could have referred to the intermittent FMLA leave she applied for on February 28, 2017, that necessarily began in March 2017.[48] Defendant Charter seemingly knew about this leave application.[49]

Also, her deposition testimony can be interpreted to say that her claim is not based on the FMLA leave she took in 2016 or earlier, which defense counsel questioned her about shortly before this alleged admission.[50] Finally, and more practically, Brooks-Kroggel's complaint does not focus solely on her March 2017 leave,[51] and it seems unlikely that Brooks-Kroggel would vastly narrow the scope of her complaint during her deposition.

Either of these alternate interpretations is plausible, and both interpretations harmonize Brooks-Kroggel's testimony, her complaint, and her behavior in this litigation. Because the Court must construe all reasonable inferences in the non-movant's favor, the Court interprets this testimony in Plaintiff's favor. Therefore, Brooks-Kroggel has presented enough evidence to suggest that Charter knew about her FMLA activities. She consequently satisfies this element of her prima facie case.

Regarding causation, temporal proximity is enough to establish the retaliation causal connection.[52] Here, Brooks-Kroggel was terminated while she was on FMLA leave, and only six weeks after she'd applied for FMLA leave on February 28.

Therefore, Brooks-Kroggel has established all four elements necessary for a prima facie case of FMLA retaliation. She took FMLA leave; Charter knew she exercised her rights; Charter terminated her; and there is a causal connection between Brooks-Kroggel exercising her rights and her termination.

---

[48] *See* Doc. 57-1 at 93:11-94:2 (referencing Brooks-Kroggel's February 3-9 FMLA leave as her "February" leave and then proceeding to ask her about her "March" 2017 leave).
[49] *See* Doc. 53-3 at 33.
[50] *See* Doc. 57-1 at 93:2-10 (questioning Brooks-Kroggel about her pre-2017 FMLA leaves).
[51] *See* Doc. 27 at 10-12.
[52] *Judge v. Landscape Forms, Inc.*, 592 F. App'x 403, 409-10 (6th Cir. 2014).

Case No. 1:17-cv-2108
Gwin, J.

### b. Pretext

Charter next argues that even if Brooks-Kroggel can establish a prima facie case, the investigation's findings about her performance deficiencies and lack of candor are sufficient legitimate reasons to fire her.[53] Further, Charter argues that Brooks-Kroggel has no evidence that these non-retaliatory reasons are pre-textual.

An FMLA plaintiff shows pretext by establishing that a reason for termination either (1) had no basis in fact; (2) did not actually motivate the termination; or (3) was insufficient to warrant the termination.[54]

Brooks-Kroggel offers sufficient evidence to allow a jury to find that Charter's non-retaliatory reasons for her termination are pre-textual.

As an initial matter, the timing of Plaintiff's termination suggests that Defendant Charter's non-retaliatory reasons may be pretext. Plaintiff Brooks-Kroggel took several medical leaves in the midst of Defendant's investigation, and the investigators knew about (and seemingly recorded) each of these.[55] Further, each of Plaintiff's medical leaves seemingly became progressively more serious, concluding with a February 28, 2017, request for intermittent medical leave and a late March extended leave request.[56] Only six weeks later, and while she was still on an approved FMLA leave, Defendant Charter fired Plaintiff.[57]

Although temporal proximity cannot be the sole support for finding pretext, the Sixth Circuit has recognized that, "suspicious timing is a strong indicator of pretext when accompanied by some

---

[53] The Court finds that if true, these are legitimate, non-discriminatory reasons for terminating Brooks-Kroggel, therefore shifting the burden to Brooks-Kroggel to establish pretext. *See, e.g., Joostberns v. United Parcel Serv., Inc.*, 166 F. App'x 783, 794 (6th Cir. 2006) (holding in the midst of a *McDonnell Douglas* analysis that a failure to follow a company's dishonesty policy was a sufficient legitimate reason for termination).
[54] *Seeger,* 681 F.3d at 285.
[55] *See* Doc. 53-3.
[56] *See* Doc. 57-1 at 93:3-19; 99:8-14 (noting that Plaintiff was approved for short-term disability while on FMLA leave after March 2017).
[57] *Id.* at 73:2-3.

other, independent evidence."[58] Here, the investigation report contains evidence of pretext. Indeed, the report itself could be construed as direct evidence of FMLA retaliation.[59]

Under the heading "Investigation Facts and Details," which the report describes as "a listing of specific events leading to the need for corrective action," the investigators list numerous details about Brooks-Kroggel's medical issues and use of leave.[60] For example, a January 24, 2017 entry states, "Marielys thought it was odd that [Brooks-Kroggel] had a [doctor's] appointment after [her interview] (and one that she didn't want to share with her supervisor) and felt that she may potentially go out on a [Leave of Absence]."[61] February 2 and 3, 2017 entries detail distraught calls from Brooks-Kroggel's husband, informing her supervisor that Brooks-Kroggel may have had a heart attack and would miss work.[62] The last entry in the report also mentions Brooks-Kroggel's February 28, 2017, application for medical leave.[63] Viewed in the light most favorable to Plaintiff, these facts suggest that Charter honed in on Brooks-Kroggel's medical issues and use of FMLA leave when deciding to terminate her employment.

Even if this report is not direct evidence that Plaintiff's FMLA leave motivated Brooks-Kroggel's firing,[64] it, combined with the temporal proximity between Plaintiff's FMLA leave and her termination, creates an issue of fact regarding whether the other non-retaliatory reasons Charter gave for her termination did not actually motivate or were insufficient to support its decision.

Beyond temporal proximity and the investigation report's numerous mentions of Brooks-Kroggel's illness and leave, that the investigators focused on Brooks-Kroggel is suspect. Brooks-

---

[58] *Seeger*, 681 F.3d at 285 (quoting *Bell v. Prefix*, 321 F. App'x 423, 431 (6th Cir. 2009)).
[59] *See, e.g.*, *Clark v. Walgreen Co.*, 424 F. App'x 467, 472 (6th Cir. 2011) ("[D]irect evidence of discrimination . . . *requires* the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." (emphasis in original)).
[60] Doc. 53-3 at 30-34.
[61] *Id.* at 31.
[62] *Id.* at 32-33.
[63] *Id.* at 33.
[64] Defendant Charter now claims that these are simply Sutton's notes and not findings relevant to the investigation. Doc. 63-1 at ¶¶ 6-13. But this competing characterization simply displays a clear dispute of fact that the Court cannot resolve on summary judgment.

Kroggel had no supervisory authority over the sales person accused of sales fraud. There is additionally no evidence that Brooks-Kroggel, as a human resources generalist, had any financial, professional, or personal incentive to either facilitate the sales fraud or to skew the investigation's findings. Indeed, Brooks-Kroggel's human resource responsibilities were not limited to this one investigation. Brooks-Kroggel covered stores in several states.[65]

However, the investigation report's timeline suggests that Brooks-Kroggel's illness could have played a role in Charter's decision to fire her. Brooks-Kroggel first went to the emergency room in early November.[66] At this point, Brooks-Kroggel was assigned to the investigation team.[67] On December 22, Jessica Sutton, Brooks-Kroggel's supervisor, removed Brooks-Kroggel from the investigation.[68]

The investigation's findings center on communications between Brooks-Kroggel and the investigators, and between Brooks-Kroggel and Cher Samels, who initially complained.[69] The investigation report also alleges that Brooks-Kroggel performed deficiently in some areas.[70] Nothing in the investigation report suggests that Brooks-Kroggel was involved with the potential fraud.

The investigation report makes Brooks-Kroggel's communications seem nefarious, but viewed in her favor, they ultimately amount to a few seemingly polite emails and Brooks-Kroggel accidentally dialing Cher Samels' phone number.[71] Additionally, Brooks-Kroggel's performance issues were apparently not especially egregious, because Brooks-Kroggel received a $13,000 bonus and a letter from Charter's CEO in the middle of the investigation.[72]

---

[65] *See* Doc. 55-1 at 10:3-11:22 (describing how Brooks-Kroggel serviced stores in the Great Lakes region, including Ohio and Indiana).
[66] Doc. 53-3 at 31.
[67] Doc. 55-1 at 59:8-60:2 (noting that Brooks-Kroggel was removed from the investigation team on December 22, 2016).
[68] *Id.*
[69] *See generally* Doc. 53-3.
[70] *Id.*
[71] *Id.* at 7-28.
[72] Doc. 57-1 at 94:3-9.

Given the temporal proximity to Brooks-Kroggel's FMLA leave, the investigation report mentioning her illness, and Brooks-Kroggel's lack of connection to the underlying sales fraud, a reasonable jury could find that Charter's non-retaliatory reasons for firing Brooks-Kroggel were pretext.

For those reasons, the Court **DENIES** Defendant's motion for summary judgment on Plaintiff's FMLA retaliation claim.

### 2. *Age Discrimination*

To establish a prima facie case of age discrimination, Plaintiff Brooks-Kroggel must show that: (1) she is at least 40 years of age; (2) she was subjected to an adverse employment action; (3) she was qualified for the position; and (4) she was replaced by a significantly younger person, or that similarly situated significantly younger persons were treated better than her.[73]

The parties only disagree regarding whether Defendant Charter replaced Plaintiff with a significantly younger person or treated younger persons better than her.

Defendant Charter states that it did not replace Brooks-Kroggel; instead another Human Resources Generalist assumed her duties in addition to that employee's own duties.[74] This employee is only four years younger than Brooks-Kroggel.[75] Plaintiff does not give any evidence to counter this evidence. Plaintiff also provides no evidence of a comparable younger employee who received favorable treatment.[76]

The Sixth Circuit has held that "[s]preading the former duties of a terminated employee among the remaining employees does not constitute replacement."[77] Additionally, "in the absence of direct

---

[73] *Grosjean*, 349 F.3d at 335.
[74] Doc. 55-1 at 12:2-22.
[75] *See* Doc. 60-6 at ¶ 5 (stating that human resources generalist Carey was born in 1966).
[76] There is no evidence that the two younger investigators that replaced Plaintiff received favorable treatment. The evidence shows that Brooks-Kroggel was only replaced on this lone investigation, as opposed to all of her job duties, and "reassignments without salary or work hour changes do not ordinarily constitute adverse employment decisions in employment discrimination claims." *Kocsis v. Multi-Care Mgmt., Inc.*, 97 F.3d 876, 885 (6th Cir. 1996).
[77] *Lilley v. BTM Corp.*, 958 F.2d 746, 752 (6th Cir. 1992).

evidence that the employer considered age to be significant, an age difference of six years or less . . . is not significant."[78]

The Court therefore finds that Plaintiff Brooks-Kroggel fails to state a prima facie case of age discrimination. Defendant Charter did not replace Brooks-Kroggel after Defendant Charter fired Brooks-Kroggel, and the employee who assumed her job duties is of a similar age.

The Court therefore **GRANTS** Defendant's motion for summary judgment on Plaintiff Brooks-Kroggel's age discrimination claim.

### B. Other Outstanding Claims

The parties have filed a stipulated dismissal of Plaintiffs Bates and Stirling's claims against Defendant Charter and of Defendant Charter's counterclaims against them.[79] Because of this dismissal, the Court **DENIES AS MOOT** the parties' motions for summary judgment to the extent they challenge Plaintiffs Bates and Stirling's claims or Defendant Charter's counterclaims.

### CONCLUSION

For those reasons, the Court **GRANTS IN PART** and **DENIES IN PART** Defendant's motion for summary judgment as to Plaintiff Brooks-Kroggel. The Court **GRANTS** Defendant's motion as to Plaintiff's age discrimination claim and **DENIES** Defendant's motion as to her FMLA retaliation claim.

The Court **DENIES AS MOOT** Plaintiffs Bates and Stirling's motion for summary judgment and Defendant's motion for summary judgment as to Plaintiffs Bates and Stirling's claims.

This case will proceed to trial on Plaintiff Brooks-Kroggel's FMLA retaliation claim as scheduled.

IT IS SO ORDERED

Dated: May 21, 2018                                      s/        James S. Gwin
                                                         JAMES S. GWIN
                                                         UNITED STATES DISTRICT JUDGE

---

[78] *Walcott v. City of Cleveland*, 123 F. App'x 171, 178 (6th Cir. 2005) (quoting *Grosjean*, 349 F.3d at 340).
[79] Doc. 61.